IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


MARY LUCILLE WEWER                                                                 PLAINTIFF


          v.          Civil No. 2:14-cv-02215-MEF


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                     DEFENDANT


## MEMORANDUM OPINION

Plaintiff, Mary Wewer, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her applications for DIB and SSI on May 31, 2012, alleging a disability onset date of April 6, 2012, due to heart disease, high blood pressure, edema, arrhythmia, high cholesterol, fatigue, recurring bone calluses, and chronic pain in the right foot. Tr. 161-171, 207. The Commissioner denied her applications initially and on reconsideration. Tr. 82-87, 92-99, 102-

106.  An Administrative Law Judge ("ALJ") held an administrative hearing on March 14, 2013. Tr. 50-81.  Plaintiff was present and represented by counsel.

At this time, she was 56 years old with a high school education.  Tr. 56, 161, 208.  She had past relevant work ("PRW") experience as a conveyor feeder-off bearer in a poultry and food processing plant from 1974 until 2012.  Tr. 56-58, 199-200, 208, 216-218.  The Plaintiff attempted to work following a mini stroke on March 25, 2012, but ultimately stopped working on April 6, 2012.  Tr. 59.

On June 7, 2013, the ALJ found that the Plaintiff's carotid artery disease status-post surgery; hypertension; chest pain; heart palpitations; and history of multiple foot surgeries were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 10-11.  After partially discrediting her subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to perform light work except she must avoid concentrated exposure to hazards.  Tr. 11.  With the assistance of a vocational expert, the ALJ found the Plaintiff could perform her PRW as a conveyor feeder-off bearer.  Tr. 14.

The Appeals Council denied the Plaintiff's request for review on August 25, 2014.  Tr. 1-4.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the

Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982) (en banc) (abrogated on other grounds); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's failure to request either an RFC assessment from a treating physician or a consultative cardiology evaluation to determine the Plaintiff's ability to perform work-related activities. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped and is required to order consultative examinations and tests when the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). However, in order to win on appeal, a claimant must show that the ALJ's further development of the record would have made a difference in his case or could have changed the outcome. *Onstead v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

In the present case, the Plaintiff's has a history of transient ischemic attacks ("TIA's"). In July 2012, she underwent a cerebrovascular atrial duplex, which showed severe stenosis of the right paroximal internal carotid artery, mild disease of the left, mild disease of the bilateral common carotid arteries with soft plaque in the left stenotic right external carotid artery, and antegrade flow in the bilateral vertebral arteries. Tr. 500-505. The doctor felt she might have

symptomatic carotid artery disease and ordered an angiogram for confirmation and strongly advised smoking cessation. The angiogram revealed heavy calcification of the right carotid artery with 50 percent stenosis and 45 to 50 percent asymptomatic stenosis in the left with normal filling of the brain. Tr. 366-367, 520-529. The doctor believed the stenosis on the right was the source for her reported TIAs.

In August, she underwent a right carotid endarterectomy ("CEA") to treat the stenosis. Tr. 437-472, 534-566. The CEA confirmed her diagnoses of carotid artery occlusion as well as hypertension, hyperlipidemia, and a history of TIAs. Between November 2012 and February 2013, the Plaintiff followed-up with River Valley Christian Clinic for medication refills and foot pain. Tr. 594-595.

On February 24, 2013, she presented in the emergency room with complaints of chest pain, palpitations, and hypertension. Tr. 588, 597-612. She denied malaise, fatigue, shortness of breath, and dizziness. Cardiovascular and respiratory exams were normal. An EKG was abnormal, but cardiac enzymes were within normal limits. Tr. 600, 612. Her chest pain resolved with one Nitroglycerine. The doctor diagnosed chest pain, hypertension, and palpitations and advised her to take extra Atenolol and Nitroglycerine if this recurred.

Plaintiff underwent a cerebrovascular arterial duplex on March 15, 2013, revealing moderate disease of the left proximal internal carotid artery but showed normal right common carotid and internal carotid arteries and antegrade flow in the bilateral vertebral arteries. Tr. 614-615. When compared to her earlier duplex scan, we note that the level of disease in her left carotid artery has progressed.

The Defendant contends that further development of the record was not warranted because the Plaintiff's symptoms resolved following surgery and no longer necessitated the services of a

cardiologist. We note, however, that the Plaintiff sought out emergency treatment in February 2013 for another TIA episode and underwent a duplex scan in March 2013 that revealed a worsening of the disease in the left proximal internal carotid artery, the significance of which is not contained in the record. Further, there is no indication in the record that the Plaintiff was released from the care of her cardiologist. Rather, the evidence indicates that the Plaintiff lost her health insurance once she used up all of her leave under the Family Medical Leave Act and began seeking treatment from RVCC and the emergency room. While we do note the conservative nature of the care given at RVCC, an arterial duplex was ordered in March 2013 to reevaluate the status of her carotid artery disease. Accordingly, we believe that ALJ should have either requested an RFC assessment from her treating doctor or sent her out for a consultative cardiology examination. Because he failed to do so, we cannot say that substantial evidence supports his decision.

On remand, the ALJ is ordered to obtain both an RFC assessment from her treating doctor and a consultative cardiology examination completed with an RFC assessment so that the record can be properly developed regarding the limitations that might result from her impairments.

**IV.   Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 20th day of January, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE